FILED

April 15 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0333

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 102N

FLOBERG COMPANIES, a Montana corporation,
d/b/a PRUDENTIAL FLOBERG REALTORS,

      Plaintiff and Appellant,

  v.

LECOIS, LTD., a Montana corporation, d/b/a
C MOR REAL ESTATE, d/b/a PRUDENTIAL RED
LODGE REAL ESTATE, and HEATHER QUINN,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DV 08-123
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            J. Robert Planalp; Landoe, Brown, Planalp & Reida, P.C.; Bozeman,
Montana

      For Appellees:

            Raymond G. Kuntz; Attorney at Law; Red Lodge, Montana

Submitted on Briefs:  March 12, 2014
Decided:  April 15, 2014

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section 1, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Floberg Companies is a Montana corporation conducting business as Prudential Floberg Realtors (Floberg). Floberg is a franchisee of Prudential Real Estate Affiliates, Inc. (PREA). Heather Quinn (Quinn) owns and operates LeCois, Ltd. d/b/a C Mor Real Estate (LeCois).[1] Floberg appeals from orders of the Twenty-Second Judicial District Court, Carbon County, dismissing its claims with prejudice, finding it liable to LeCois and Quinn for breach of contract and wrongful retention of "override" funds in the amount of $28,517, and awarding LeCois and Quinn costs and attorney's fees. We affirm the order dismissing Floberg's claims and finding Floberg liable to LeCois and Quinn. We remand the order on costs and attorney's fees.

¶3 This case arises out of a 2004 agreement between Floberg and LeCois to form an LLC to conduct real estate sales in Red Lodge, Montana. Floberg and LeCois organized Properties Red Lodge, LLC (LLC) on May 27, 2004. They later executed several other agreements, including a Contract for Satellite Office and an operating agreement.

---

[1] LeCois is currently known as Prudential Red Lodge Real Estate.

Marilyn Floberg (Marilyn), Floberg's president, drafted all the contract documents between the parties.

¶4     Neither party contributed any capital to the LLC. Floberg initially proposed that LeCois receive 100% of the LLC's income. When PREA protested, Floberg suggested that LeCois receive 95% of the LLC's income and Floberg receive 5%. During negotiations, Floberg agreed that Quinn would retain ownership of LeCois, and that everything LeCois put into the LLC would be returned to LeCois upon termination of the LLC. The operating agreement reflects this arrangement, providing: "in the event of termination of this Agreement for any reason, Lecois Ltd. shall be entitled to the return of all assets and property held by Lecois, Ltd. or its principals prior to the execution hereof and acquired by it during the term hereof."

¶5     As part of the franchise deal with PREA, LeCois forwarded 6% of its gross commission income on each transaction to Floberg. An exhibit to the operating agreement provided: "Franchise Fee of 6% is collected all year long (Franchise year is October 1st – Sept. 30th) and then rebated once per year when we determine the actual average percentage franchise fee paid for the 12 months of the franchise year." Marilyn told Quinn that Floberg actually paid less than 6% to PREA and would rebate the difference to LeCois at the end of each year. Marilyn never mentioned that Floberg would keep part of the franchise fee as an "override." Floberg nevertheless retained 1.6% of LeCois's gross commission income each year. In 2007, Floberg retained 4.2% of LeCois's gross commission.

3

¶6 The operating agreement required the consent of both members before a member could withdraw, and it provided that the LLC would dissolve upon the withdrawal of a member. In 2007, Quinn informed Marilyn that she no longer wished to be in business with Floberg, and Marilyn said "that would be all right." Floberg and LeCois advised PREA that the LCC would "no longer continue as a going concern." Floberg independently renewed its franchise agreement with PREA on November 29, 2007. On December 28, 2007, PREA granted LeCois a separate and independent franchise.

¶7 In July 2008, Floberg filed a complaint against Quinn and LeCois alleging various tort and contract claims. In October 2008, Quinn and LeCois counterclaimed for breach of contract and breach of the implied covenant of good faith and fair dealing, fraud, malicious abuse of civil process, and tortious interference with economic relations. On October 27, 2011, Floberg filed an amended complaint, alleging the following causes of action: breach of statutory duties, breach of fiduciary duty and duty of loyalty, tortious interference with economic relationship, breach of the implied covenant of good faith and fair dealing, conversion, fraud, request for accounting, petition for judicial relief including injunction, negligence, negligent misrepresentation, and constructive fraud. Quinn and LeCois later filed an amended counterclaim and cross-claim, adding four additional counterclaims.

¶8 After a flurry of briefing, the District Court held a bench trial on September 24 and September 25, 2012. On December 12, 2012, the District Court issued its findings of fact, conclusions of law, and order. It awarded Quinn and LeCois $28,517 in wrongly

4

retained "override" funds. After briefing on the issue of attorney's fees, the District Court issued an order awarding attorney's fees to Quinn and LeCois in the amount of $165,085.50 with interest of 10% per annum until paid in full. Floberg timely appealed the orders.

¶9 Floberg argues that the written agreements between the parties had not terminated prior to Quinn's alleged breach of the implied covenant. Floberg asserts that Marilyn consented to Quinn withdrawing from the satellite office but did not consent to her withdrawing from, and thus dissolving, the LLC. LeCois and Quinn counter that the evidence shows Marilyn agreed to terminate the business relationship and consented to LeCois's withdrawal from the LLC.

¶10 The District Court noted that "Floberg drafted the contract documents without scrupulous attention to substance and detail." The court properly construed all ambiguities in the documents regarding dissolution and disassociation against Floberg pursuant to § 28-3-206, MCA. Though the record suggests that Marilyn may have been "unhappy with the idea of PREA granting [Quinn] a small market franchise, at no time did Marilyn ever tell [Quinn] that she could not withdraw from the LLC or that she was prohibited by law or contract from establishing a [standalone] franchise with PREA." By the terms of the operating agreement, the LLC dissolved when "[a]ll of the [m]embers consent to a dissolution." We conclude the District Court did not err in finding that the LLC terminated because Floberg consented to LeCois's dissociation.

5

¶11     Because we reject Floberg's argument that the operative agreements and the LLC remained in effect, we decline to reach Floberg's argument that Quinn was the manager of the LLC and that she breached her fiduciary duties, as the alleged breaches occurred after the dissolution of the LLC. We also decline to address the other events that could have caused dissolution of the LLC.

¶12     We next address the parties' dispute regarding the existence of any damages. The District Court found that "Floberg had no reasonable expectation of profit from the arrangement with LeCois because LeCois had no obligation to renew the franchise agreement or continue in business with Floberg." It further found that Floberg had no contractual right to an "override." A review of the record establishes that these findings were supported by substantial evidence. We conclude the District Court did not err in concluding Floberg suffered no recoverable damages.

¶13     Floberg also alleges that Quinn and LeCois did not have standing to pursue a claim for increased rebates under the Contract for Satellite Office because only the LLC had standing for such a claim. Quinn and LeCois counter that they had standing because LeCois was a party to the Contract for Satellite Office, Quinn executed the signature page as LeCois's president, and they were the intended third-party beneficiaries of the parties' various agreements. They argue Floberg is judicially estopped from making this argument because it alleged in its complaint that they were parties to the contract who were bound by an implied covenant of good faith and fair dealing.

6

¶14 In its complaint, Floberg alleged that "[a]s parties to the Operating Agreement and Addendum to Real Estate Brokerage Franchise Agreement, Defendants Quinn and Lecois, Ltd. are bound by an implied covenant of good faith and fair dealing." We agree with LeCois and Quinn that Floberg is estopped from arguing that they lack standing because of its original position regarding their role as parties to the contracts. Thus, we conclude LeCois and Quinn had standing to pursue their claim against Floberg for breach of contract and wrongful retention of "override" funds. Further, we conclude the District Court did not err in its calculation and award of "override" funds to LeCois and Quinn.

¶15 As to attorney's fees, the Contract for Satellite Office provides: "If either party institutes legal action for the enforcement of this Contract, the prevailing party shall be entitled to a reasonable attorney's fee in addition to costs of suit." Floberg maintains the District Court erred in awarding attorney's fees to LeCois and Quinn because they did not have standing to institute legal action under this contract. Given our disposition of Issues One and Two, we conclude that the District Court did not err in awarding costs and attorney's fees to LeCois and Quinn. However, we note that the District Court awards Quinn and LeCois costs and attorney's fees in the amount of $165,085.50 in its order, but awards costs and fees in the amount of $193,602.50 in its judgment. Thus, we remand on this issue for a determination of the proper award of costs and attorney's fees. In addition, we remand for consideration of Quinn and LeCois's request for attorney's fees and costs incurred on appeal.

¶16    We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our internal Operating Rules, which provides for noncitable memorandum opinions.

¶17    For the forgoing reasons, we affirm the District Court's order dismissing Floberg's claims and finding Floberg liable to LeCois and Quinn.  We remand the District Court's order on costs and attorney's fees.

/S/ PATRICIA COTTER


We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE